First case we'll hear this morning is United States v. Hill, and I guess Mr. Gilbert, you're first. Yes, Your Honor. My name is Joseph Gilbert. I represent Jacquez Hill, the appellant in this case. And good morning, Judges Niemeyer, King, and Diaz. May it please the Court. This case arises from an appeal of a plenary sentencing hearing ordered by this Court due to the District Court's error originally by not adding supervised release conditions, or by adding supervised release conditions to the judgment that were not entered in open court. On remand, Judge Boyle imposed an unreasonable sentence because, first, he failed to explain and address why the Court chose to reduce the original sentence, or why it disagreed with the non-frivolous arguments raised by counsel for a sentence within the United States Sentencing Guidelines. The second problem with the case is that the District Court failed to follow Federal Rule of Criminal Procedure 32-I-3-B, requiring that District Courts either resolve disputes such as that raised by Mr. Hill's allocution, or by stating that those matters would not be considered in determining the sentence. A sentence in this case is unreasonable, both procedurally and substantively. And for that reason, Mr. Hill has appealed to this Court to seek a remand for a new sentencing hearing. On the first point, where you say the Court didn't explain why it reduced the sentence sufficiently, let me lay out what I think I see here and then let you comment on it. The Court said, And the Court has taken all those factors into account and heard appropriately as to the factual basis for the plea and also considered the defendant's extensive comments and lawyers' comments regarding his behavior in the Bureau of Prisons and his efforts to reclaim his life and to improve himself and to be a lawful participant. Given all those factors, the Court will reduce the previous sentence from 120 to 108. Do you argue that that's not enough? Yes, Your Honor. And there's another problem with that, too, that I think is significant in this case, and that is, the Court went into this hearing, apparently, based upon what you just quoted from, I believe that's in the Joint Appendix, pages 74 and 75, and that was the District Court's entire explanation of the sentence. Well, I know, but, you know, the transcript has the defendant explaining at length what he's done. He says he's now become conscious and he's learned, he's changed, he's going to reform. And then the lawyer, the Court invited the lawyer to make a comment, too, actually sort of provoked him, but the lawyer made similar types of arguments. And then immediately after those two things, the Court says, I've heard both those things and I've taken them into account and specifically referred to prison reform and the change in a person's life and said, for that reason, I'm going from 120 to 108. Now, I'm not sure that we are denied the opportunity to review that. In other words, we now know why he reduced it. That's the whole purpose for the procedural rule that the Court explained it. And clearly the Court took that into account, but the Court was also troubled with the history, as the Court explained, but immediately after his last prison sentence, he came out and started trafficking in drugs again. So, it was a balancing thing, and we can review that now. I don't think there's a mystery about it. That's the whole rule, is to give us the opportunity to determine whether the Court went off base or not. Well, your argument, I gather, is basically that's not precise enough. That must be the argument. No, Your Honor. Again, part of the problem is that the Court used the wrong benchmark. The Court says, I'm now going to reduce the previous sentence from 120 months to 108 months. The benchmark of sentencing under the long line of cases since Gall and Rita and cases from this Court have been that this benchmark starting point is the sentencing guidelines. And if the Court is going to vary upward from that, then the Court needs to explain two things. Why it varied upward, and why the guidelines weren't enough. This is the re-sentencing under Rogers. And so, all the other things the District Court did in sentencing, he went through the whole sentencing procedure and came to 120 months. And so, the Court then corrected the Rogers error with respect to supervised release conditions. And then, also, which it was not mandated to do, but because of intervening facts that were explained by prison conduct and prison reform, the Court says, I'm reducing that 121 sentence to 108. Your argument, I guess, is that the Court probably should have started on a whole recalculation of the guidelines. I thought it did, but maybe I'm wrong. No, you're not wrong, Your Honor. It is a plenary sentencing hearing on remand, despite the many attempts by the government over the years to try to get this Court to say, let's let him just go back and fix that one little discreet error. The Court did, in fact, enter a guideline range in this new plenary hearing, like you said. But the Court really failed to address multiple non-frivolous arguments by the defense and by Mr. Hill, asking for a sentence within the guidelines. These were mostly at pages 65 to 67 of the joint appendix. But he raised the fact that his attitude had changed based upon his previous sentence, and that the time in the DOP that he'd spent would help reduce the risk of recidivism. He pointed out his Herculean efforts to get the GED, despite the COVID protocols, and the fact that he'd developed three different business plans, which showed that he can succeed lawfully when he leaves the DOP. He also had argued in both sentencing hearings, Your Honor, you pointed out the first one, he argued that his immaturity and young age, when he first encountered the criminal justice system, are mitigating, not aggravating factors, despite the fact that the District Court originally treated that as entirely aggravating factors. So, Mr. Gilbert, are you suggesting that the Court needs to go line by line in saying and explain why it either accepted that particular mitigating factor or rejected it, and explain why? Because I think, as Judge Niemeyer indicated, the Court did note that it had weighed both your client's comments and his lawyer's. Were you the lawyer? I'm quoting from the JA, to improve himself and to be a lawful participant. Now, that's pretty general, I'll grant you, but it suggests that the Court was paying attention to those things you just ticked off and acknowledged the validity of those mitigating factors. And that's, in part, why it reduced the sentence to 108 months. But, on the other hand, as the record plainly shows, there were some troubling aspects to your client's prior criminal history that bothered the District Court. So, I mean, I guess I'm struggling to figure out what else the Court should have done or was required to do. I agree with you, Your Honor, that the District Court is not required to robotically tick through everything that is said by counsel. But I think that the facts of this case, it's clear that the Court ignored some very significant things that were raised. Another one was the District Court failing to address the fact that the defense counsel pointed out and submitted to the Court a letter from his high school teacher pointing out how he thrived in a positive environment. So, I think that it's, the Court did not even do, I just feel that the Court did not adequately address or explain, you know, why, when the guideline range is 63 to 78 months, and when the guidelines themselves seem to incorporate all of these factors that the Court was concerned about. You know, he gets this enhancement for attempting to flee law enforcement and endangering people, so he gets a bump on that. Why 63 to 78 months is not sufficient but greater than necessary, and why the Court, instead of saying this is a sentence that is sufficient but not greater than necessary for these reasons, and addressing, you know, what kind of, the Court originally, and the second time around, seemed to be really interested and focused on the public safety. So, let me ask you about this. Do you think that we are entitled to go back to that earlier proceeding and look at what the District Court said there? It's the same District Court that had Mr. Hill before it the first time and made some comments related to his prior criminal history there. Can we combine those to perhaps satisfy the justification for the upward bearing sentence? The phrase the government used was, it should be a backdrop, and it is a procedural backdrop, and it's something that this Court, I believe, this Court needs to consider when you view the totality of the circumstances, the totality of the case for purposes of substantive procedural reasonableness. But the record that we have before us now from this plenary hearing should be the important record. But we ought to be able to look at the whole picture, shouldn't we? I think you should. Yes, Your Honor. So we can take into account what happened before, and that's part of the case. It is, and nobody should... He got 120 years, 120 months, the first time around, right? Yes, Your Honor. And Judge Boyle reduced it by 12 months, and he was concerned about the public safety problem. That's entirely what the district court was concerned about. And he said that the second time. He mentioned public safety. He did, Your Honor, both times. But I think the two main problems here are, number one, he shouldn't have started with 120. He said, now I'm going to start with what I gave you last time, and now I'm going to give you a reduction. Almost like it's some sort of a 3582 hearing, not a plenary sentencing hearing. He should have basically... And he did. In fact, he did say this is what the guidelines are. The guidelines are 63 to 78 months. But then the judge did not, the district court did not then say, you know, I think that despite everything that you've done, that you're not going to succeed on supervised release as you're suggesting from all of your arguments. That you haven't truly changed your ways, and that you are going to be a problem. So I think that that's the two primary problems with it. Did the district court find the same guideline range in the first sentencing? It did, Your Honor. So this case doesn't involve an improper calculation of the guidelines. It's a challenge to the variance. And in the first case, the court went up to 120 months. And then there was a violation of Rogers, which is the supervised release. We sent it back to correct that. And so the court re-sent it and found the same guidelines range again. But this time went up to 108 instead of 120. Yes, Your Honor. And it did so because of what the defendant and his counsel pointed out to the court about prison reform while in prison. Partially. Yes, Your Honor. And again, it's just the court really just failed to explain why and how it came up with that reduction from 120 down to 108. Rather than why, under the totality of the circumstances known to the court at this time, based upon the arguments presented in the sentencing memo presented in court, why the sentence required a sentence of 108 months. That's still a large upward variance from the sentencing guidelines. And that's basically our argument. Thank you, Mr. Chairman. No further questions. Oh, no, I'm sorry. I didn't mean to cut you off. No, I just wanted to say there's no further questions. Thank you, Your Honor. Thank you. All right. Ms. Fritz. Good morning. May it please the court, Christine Fritz on behalf of the United States. Today I'm asking you to dismiss the guidelines in Rule 32 challenges pursuant to the appeal waiver and the plea agreement and to affirm the upward variance sentence as procedurally and substantively reasonable. I'd like to turn first to the upward variance argument and, in particular, the procedural reasonableness of that. The defendant focused his argument on the district court's purported failure to explain the sentence and respond to his non-frivolous mitigating arguments. When the sentencing transcript is looked at, both in terms of the defendant's allocution as well as the defense counsel's arguments, the overriding theme of the argument, the non-frivolous mitigating argument, was that the defendant was changing himself, that he took seriously his federal prosecution, that the 120-month sentence was an eye-opener, that he was remorseful, and beyond just words, he had been demonstrating to the district court these things through his actions, through his participation in the GED programming, other programming, through not having infractions, and things of that sort. So when presented with this argument, the district court absolutely acknowledged and responded to it when the court made the remark that you highlighted, Judge Niemeyer, that he had considered the defendant's extensive comments and the lawyer's comments regarding his behavior in the Bureau of Prisons and his efforts to reclaim his life and to improve himself and to be a lawful participant. Having responded to the overwhelming theme, the central thesis of the argument, it wasn't necessary for the district court to rebut each individual point. For example, the information about the defendant's youth and his age when he first encountered the criminal justice system, that was part of the defendant explaining, this is where I was, this is who I was, consider the man I am now. Well, it's a little bit strange for the argument because the court gave it credit. It didn't reject it and stick with the 120. Correct. It did give it credit, and obviously it weighed how much it wanted to reduce the sentence that it had earlier imposed. And so it's basically the defendant won some reduction, but apparently, I guess, he's arguing he should have gotten a greater reduction. That's my understanding. The defendant had requested a sentence within his advisory guideline range of 63 to 78 months. That was what defense counsel had advocated for both in the sentencing memorandum and during the sentencing hearing, and he did not get what he wanted. But the fact that the court in its words responded to the argument, and the court also in its actions, it did give some weight to the fact that the defendant had been conducting himself well in a controlled environment. But that didn't outweigh the concerns about public safety, about the danger to the community, because the defendant had established that he had a pattern. It outweighed it to the extent of 12 more months. Yes, to 12 more months. So fewer months. So fewer months. So the court tempered the extent of the upward variance. Initially, it was a 42-month upward variance, and on the resentencing, in light of the arguments that had been presented, the court reasoned that an upward variance of 30 months was appropriate. What about Judge Deha's question? Are we entitled to look at the proceedings that initially were had with the first sentence? Yes, Your Honor. We can look at everything. You can look at everything? Everything that occurred in the first sentencing is available and proper for the court to examine. Yes. Is that correct? That's correct. You've got case authority for that? Well, it's generally part of the record, and I think that when you look at— You have a case in the Supreme Court. In resentencing, you take into account all factors. Yes. On a resentencing. So there you go. Yes. And I think also there is a tie to what happened at the resentencing because the court specifically refers to the concerns about the public safety and the danger to the community, and what had been said and discussed at the previous sentencing hearing definitely gives more meat to the court's reference to public safety, danger to the community. Right, and that's a concern I had because otherwise, I mean, this sentence, the danger to the community, the injury to other people involved, that's not really tethered to anything in the record, and so that's why I think it's important to go back and look at what Judge Boyle said the first time around. Yes. It is important to go back to what Judge Boyle said the first time, and although this was a plenary resentencing, this wasn't a completely clean slate. The court hadn't forgotten the concerns that it had previously articulated. I think that the litigants approached the sentencing hearing with the understanding of what the court had previously expressed concerns about and tailored their arguments to that effect. So we would suggest that the court can consider everything the district court had said at the prior sentencing hearing. Not just everything the court had said, but everything that's in the record from the prior sentencing hearing. Yes. That's your position. That's our position. Yeah, that's what I thought. And I'm sorry, I was thinking more in terms of the procedural reasonableness in the court's explanation. Generally, the focus is on what the court had said in the sentencing hearings. Substantively, we think that the upward variance was supported. Can I ask you a question? Does it matter that, I guess it doesn't if we can, by virtue of the case, Judge Niemeyer decided to consider it, but does it matter that the district court didn't expressly incorporate by reference those earlier comments? You probably didn't even remember. My sense of this is when this defendant showed up in front of Judge Boyle's courtroom. He said, why are you back here? The court did make a comment as to why the defendant was back there again. The court was familiar with what had happened, I think, when you look at the sentencing. You really think so? Yes, I absolutely do. I have seen defendants come before this particular judge who had been sentenced in criminal cases decades prior, and it's shocking the details that he recalls. I do believe that the court takes its sentencing obligation seriously and came to this sentencing hearing prepared to impose judgment on this individual. To that degree, I think that, yes, the court was familiar with the offense conduct. It had specifically referred to the factual proffer regarding the offense conduct, the comments about the dangerousness in the community. Again, those make sense in part because of the understanding of the sentencing hearing that had proceeded at this point. The court also, in imposing sentence, specifically said that it was going to, given all those factors, the court will reduce the previous sentence from 120 months to 108 months. That again shows the familiarity and awareness of what had proceeded at this point. Can I ask you about one of the arguments that Mr. Gilbert makes, is the fact that this defendant was fairly young when he committed these offenses, and we have said expressly that youth is a mitigating factor in this circuit that a district court is bound to consider. Is there anywhere in this record where the district court expressly says, I've taken into account your youth, and notwithstanding that, I still think that an upward-varying sentence is appropriate? And is that necessary if it's not there? My answer to that is two parts. First, yes, the court was aware of the defendant's youth, and you can see during the original sentencing, the court specifically expresses concern about the defendant being as dangerous as he was at such a young age. Well, that's not exactly a mitigating statement. That's not a mitigating statement, but it's an acknowledgment that the defendant is very young. Did he mention that at this hearing or the first hearing? This was at the first hearing. First hearing. So you need to answer that question that way. You need to refer back to that first hearing. I am referring back to that first hearing, which was a specific acknowledgment that the defendant was young. Right, and the court says at this level of dangerousness, he needs to be quarantined from society. I suppose the district court can take stock of a particular defendant and decide how to consider a particular factor, but I guess my point is, was there any consideration that youth might in fact be a mitigating factor in this case? My response to that is that there are times when a defendant may present an argument that it is presenting as a mitigating argument, but the district court may not see it the same way. Fair enough. And I think that the court's comments reflect an awareness that he is a young man. But he was on supervised release for eight state felonies when he decided to resume his drug dealing. And the court was very concerned that at this particular level, he engaged in one attempted vehicular flight and one vehicular flight in connection with his offense conduct after having engaged in the vehicular flight previously that seriously injured three of his friends. And the court is looking at a young man with a record that is very egregious, and the court does acknowledge his age, and then the court goes on to say that nothing about his background gives the court confidence that he's going to reform himself. So while age was presented as a mitigating factor, I think the record demonstrates that the court was aware of his age, had considered it, but saw it through a different lens and saw it as this was a young individual whose trajectory in crime was very concerning and it needed to be stopped. The second part to my answer to your question is that when I looked at the arguments at the resentencing, the comments about the defendant's age and his youth, they were presented as part of this broader argument about this was the man that I was, these were the mistakes that I was making, the way I was thinking about things, I didn't appreciate my actions, compared to the man I am standing before you today. That I have taken to heart what you've said, I have engaged in programming, I'm doing everything that I can do to show you that I am changed and deserving of leniency. So again, the record does show an awareness of his age, but I also think that in terms of the presentation of the youth argument, it didn't strike me as being a freestanding argument. It struck me as being part of this broader presentation of a case that, based on what he had been doing in the meantime, he should receive a within-guideline sentence, is what the defendant argued. And the court agreed to some extent that this was noteworthy and it was worth factoring into the sentence, but that it only was warranting a change in 12 months or an upward variance of 30 months. In terms of, I know that Mr. Gilbert talked about the guidelines arguments. We do believe that those were waived pursuant to the plea agreement, which encompasses arguments related to the establishment of the advisory guideline range. Separately, I also want to point out that at the resentencing, there was no dispute as to what the guidelines range was. The defendant's sentencing memorandum, specifically, walked through the calculation of the advisory guideline range, as had been done at the original sentencing, specified that the advisory guideline range was 63 to 78 months, and asked for a sentence within that range. So there were no objections to the guideline range before the court at the resentencing. So it wasn't necessary for the court to walk through a whole new recalculation, even though we acknowledge that this is a plenary resentencing, but that had already been resolved. Again, we don't think that you need to get into either the guidelines or the Rule 32 challenge because of the appeal waiver, and that the extent of the variance should be measured from the guideline range as established at the sentencing, so that it is a 30-month upward variance. Does the court have any further questions for me? Thank you. Thank you. We ask you to dismiss the guidelines challenges and affirm the sentence. Mr. Gilbert. Thank you, Your Honor. First, when we talk about the previous hearing, what happened in the previous hearing, I agree that this court has to examine the totality of the circumstances for substantive reasonableness, and no one should expect that a district court judge walks in blindly, even though this particular district court does seem to not even know why the case had been remanded. But what's really important is that the court not make the same mistakes the second time that it made the first time around, The court originally, clearly, angrily, it seems, made youth an aggravating factor the first time around. In fact, it had to take a break. It threatened to go to 180 months, and they came back, and that means it finally ended up with 120 months the first time around. But the court also shouldn't make the same mistakes it made. The first time around, the government counsel was playing pretty fast and loose with the facts about the prior conviction from three years before when he had wrecked a vehicle, and the district court accepted it when the government counsel said, he didn't even get scored. Well, he did get scored. It was a confirmed sentence in the very next paragraph of the PSR. That was scored. Also, there was absolutely no- Was there an objection to that? No. So- No. I'm going to have to be candid about that. The defense counsel did not object. But the bottom line is the district court comes out and says, okay, because it is a danger to the public, it is injury to others, which in the record, there really isn't any evidence that is proper by the prosecutor. He's going way beyond any of the details of the two-sentence report. And then he says, and the escape. That's clearly wrong. There was never any escape by- You're talking about error at the first- Yes, sir. Yes, sir. The first time around, there were a lot of factual problems that the district court should not carry forward. Yeah, but aren't those all- That all goes into the calculation of the guideline range. The court gave a separate weighing and analysis for its variant sentence. And it seems to me the waiver covers the calculation of the guidelines and the enhancements and so forth, whereas you do get to argue outside the waiver, the variant sentence, I think. Yes, sir. And I really want to make sure I'm precise about this so I don't appear to be misleading the court. With respect to the appellate waiver, first of all, Mr. Hill does not concede that he knowingly and voluntarily entered that waiver because the court has to discuss it with him  At JA21, the district court at the arraignment hearing, the Rule 11 hearing, said you're entering a written plea agreement. You're going to plead guilty to counts 1, 7, and 10. Waive your right to appeal. Reserve only the right to appeal from a sentence in excess of- But we ruled on that. Pardon me? We ruled on that waiver point. You did, Your Honor. On March the 4th, 2022, we said his appeal falls outside, that's this appeal, falls outside the scope of the appeal waiver. What are we getting in the appeal waiver for? Well, I agree, Your Honor. That's, I think, Doc 23 on this. And you're up here arguing whatever you want to argue. The only point I'm trying to make, Your Honor, is that really, irrespective of how you look at the appellate waiver, if the court makes errors, fundamental errors, in deciding the ultimate sentence, when you do your substantive review of the totality of the circumstances, then the appellate waiver should not keep you from doing that. That was the only point I was trying to make about that. But, and again, Your Honor, it's the problem, the central problem here is that the court started with 120. The court walks into that room, says, okay, now that I know we're back here, the judge, mentally, based upon everything that comes out of this record, okay, I gave you 120. Now, I'm going to give you a little bit of a break because some of the things that you said and some of the things your lawyer said, and I'm going to reduce that sentence. Instead of actually, backwards, instead of saying, okay, this is what the guideline range is, I don't think that's enough, despite everything that you've done, and so, therefore, I'm going to go up. How much am I going to go up? And why am I going up to that point? That doesn't exist in this record. And he said for public safety. Well. And he added, what, this guy, referenced the AK-47, right? And he said, I don't want to talk about that. Well, your honor, you brought up the AK-47. That's kind of, makes a reference to public safety. I agree with that, your honor. In response to your question, there was an allegation by some C.I. that he had, that he had seen an AK-47 in a house that they argued also was something that he should get a point scored against him for maintaining a dwelling. And, again, I'm not trying to. It was a reference to a trap house, they called it. Yes, sir. He didn't have any controlling interest over the house. And the police, he objected, what Mr. Hill himself said was, you know, if the cops had just followed up on what the guy said, they would see there was no gun involved in the house. Because, yeah, we don't want to have guns around my family's kids or whatever. But, again, your honor, I don't want to, like, beat to death the waiver. I just wanted to make it clear that he's not conceding that. Even if the court decides that the appellate waiver should somehow mean that there's no objection to the guidelines, this court can still look at the way the court made those conclusions, and if those are wrong, then that should be part of the calculate that the court uses. Thank you, Mr. Hilbert. Thank you. We're a little over time. First of all, I see that you were court appointed, and I want to recognize that service, of course. We all agree that it's really one of the most important aspects of our system is to have lawyers serve the court in that capacity, and thank you very much for that. We would normally come down and shake your hands. That's a custom of our court, and we're still, I hope, last time, we're still in the protocols for COVID, so we're not doing that. We do thank you for your arguments, and we give you some kind of an abstract handshake from the bench here. Thank you very much, and we'll proceed on to the next case.
judges: Paul V. Niemeyer, Robert B. King, Albert Diaz